KEVIN V. RYAN (SBN 118321)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney

    450 Golden Gate Avenue,10th Floor
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7264
    Facsimile:   (415) 436-6748
    Email:      abraham.simmons@usdoj.gov

Attorneys for John E. Potter

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| LINA SIAM,<br><br>           Plaintiff,<br><br>   v.<br><br>JOHN E. POTTER,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. C 04-00129 MHP<br><br>**E-FILING CASE**<br><br>**NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT** |

        Date:      April 18, 2005
        Time:     2:00 p.m.
        Place:    Courtroom 15, 18th Floor
        Before:   Hon. Marilyn Hall Patel

## <u>NOTICE OF CROSS- MOTION AND CROSS-MOTION</u>

    PLEASE TAKE NOTICE THAT on April 18, 2005 at 2:00 p.m., before Judge Marilyn Hall Patel, in Courtroom 15, of the Federal Building at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant John E. Potter, by his attorney, Kevin V. Ryan, United States Attorney for the Northern District of California, will move this Court for an order granting summary judgment in favor of defendant on all plaintiff's claims.

    Said cross-motion is made on the ground that many of plaintiff failed to timely exhaust a number of the claims in her complaint and on the further ground that plaintiff has insufficient evidence and legal foundation to support the remainder of her claims.

1   This cross-motion is based on this Notice, the following memorandum of points and

2   authorities, the declaration of Abraham A. Simmons, the pleadings on file in this matter and on

3   such oral argument and additional evidence as the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. OVERVIEW

6   Plaintiff Lina Siam has been a Manager of EEO Dispute Resolution with the United

7   States Postal Service ("USPS").  She has been on "stress leave" since January of 2001 and now

8   asserts she would return to work if offered the right job.  Siam has filed this lawsuit principally

9   under Title VII alleging discrimination on the basis of her sex, race and national origin.

10  Specifically, plaintiff alleges she was treated disparately because she is a female, is Asian Pacific

11  and was born in the Philippines.  She also makes sporadic claims of sexual harassment, a hostile

12  work environment, retaliation, and failure to pay overtime and other benefits to which she is

13  entitled under the Fair Labor Standards Act ("FLSA") and other Department of Labor rules.

14  Defendant is entitled to summary judgment with respect to each of the claims in the complaint.

15  Most of Siam's claims relate to conduct that occurred before March 30, 1999 and should

16  be dismissed as untimely.  Siam filed her first administrative complaint on September 4, 1999

17  and she first sought counseling with respect to the allegations in that administrative complaint on

18  April 29, 1999.  As a professional engaged in the counseling, investigation and supervision of

19  EEO claims, Siam was in the best position to recognize that her complaint was not timely with

20  respect to any alleged misconduct prior to thirty days before her counseling request.

21  Nevertheless, Siam attempts to raise claims dating back to 1993.  Because Siam failed to exhaust

22  her administrative remedies with respect to all claims predating March 30, 1999, all such claims

23  are untimely and should be dismissed.

24  Further, regardless of the timeliness of any of her claims, Siam has failed to establish a

25  prima facie case with respect to any of the claims raised in her complaint.  Siam has managed to

26  fill the record in this case with an impressive number of allegations regarding the numerous

27  persons who are accused of acting illegally.  Nevertheless, a careful review of the record

28

CROSS-MOTION FOR SUMMARY JUDGMENT
C 04-0129 MHP                    2

demonstrates that none of these allegations should be permitted to go to trial. Most of Siam's claims are based upon nothing more than hearsay upon hearsay or are simply exaggerations or mis-characterizations of non-actionable legal activity. For example, plaintiff (1) asserts she received fewer awards than others, but presents no proof of this, (2) claims she received less training than others, but again, presents no proof, (3) argues she received less favorable assignments than her collogues, but cannot demonstrate this and (4) asserts she should have been included in a performance-based bonus program (the "EVA program") in 1991 even though the program was for performance and even though she was out on stress leave for all but two weeks in 1991. As with these four examples, the remainder of plaintiff's eleven claims are simply not supported by proof. Moreover, plaintiff cannot demonstrate how or why the numerous persons involved in making the litany of decisions she challenges would have been motivated to discriminate against her. In sum, because there is a complete failure of proof with respect to plaintiff's prima facie case, defendant is entitled to summary judgment.

Finally, defendant is entitled to judgment as a matter of law with respect to Siam's FLSA claim. As a manager of EEO Dispute Resolution, plaintiff's work meets the three-part test required to establish her position is exempt from the FLSA. Accordingly, plaintiff is not entitled to bring a cause of action under the FLSA and this claim must be dismissed.

## II.   FACTS

The district court complaint in this case is based upon four administrative complaints as follows:

A.   EEO Case Number HO-0111-99

Plaintiff first sought EEO counseling on April 29, 1999. She filed her first formal complaint on September 4, 1999. Nevertheless, plaintiff alleged discrimination based on race (Asian / Pacific Islander), national origin (Philippines), sex (female) and retaliation (opposition to alleged discriminatory practices) from 1993 through 1999. Specifically, Plaintiff claimed she had been subjected to harassment and disparate treatment in that she was not recognized with awards, she was not given appropriate training opportunities and she was not afforded higher

level "detail" assignments.   As explained below, plaintiff challenges principally the decisions made by Bernadine Faison, a second level supervisor working in the "Area Office" at a separate building.

            1.     Awards

Plaintiff alleges she received fewer awards than other employees.  She complains that she did not receive a monetary award in connection with an outstanding rating in either 1993 or 1994.

            a.     The 1993 evaluation and award

Plaintiff's 1993 evaluation was completed by her supervisor, Tamu Tatum. See Simmons Declaration, Exh 1, Deposition of Lina Siam, Sept. 13, 2004 ("Siam Depo.").[1]  Plaintiff stated at her deposition that "postal policy says if you give an employee an outstanding evaluation, there should be a monetary dollar amount attached to it.  There was no money attached to mine." Siam Depo at 59.

Plaintiff does not know of anyone in fiscal year 1993 who worked under the same supervisors, Randall Sims and Bernadine Faison, who received a cash bonus for an Outstanding evaluation.  Simmons Declaration, Exhibit 2, Siam Admin Depo. at 80:14-18, Siam Depo. at 61. Siam alleges Norris suggested that she did not deserve the evaluation when he told her "they think you walk on water." Siam Depo. 39:13-30.  Plaintiff also alleges that another worker told her that Norris called her a "Dragon Lady." Siam Depo. at 51.  As a result, plaintiff suspects that Norris might have influenced Faison not to give her an award.  Siam Depo at 42:4-10; 44:15-19.

Norris never used a racial epithet in Siam's presence. See Siam Depo. at 51.

/ / /

/ / /

---

[1]     Lina Siam was deposed as part of the administrative proceedings in this case and again after she filed her complaint in federal court.  The deposition in these proceedings are referred to herein as "Siam Depo." and the administrative deposition is referred to herein as "Siam Admin. Depo."

1

                    b.       The 1994 award

2        Plaintiff alleges she was told other workers in her unit received awards from 1994 to the

3 present and that such awards were not made publicly so as to prevent persons from knowing they

4 had been given.  Plaintiff testified that she believes Judy Martinez and Bill Norris influenced

5 Bernadine Faison to disregard Siam's accomplishments.

6                2.       Training

7        Plaintiff claims that she received less training than any other persons in her unit.  Siam

8 Depo. at 148.  She claims that she is aware of this because sometime in the year 2000 she saw a

9 printout from a computer being carried by her then-supervisor. Siam Depo. at 148:9- 13.  At

10 plaintiff's deposition, she admitted she does not know what time period the printout covered, the

11 database from which it was pulled, the purpose of the document or any other details. Siam Depo.

12 148- 150.  She also alleges that she probably had less training than others because she was, from

13 time to time, asked to cover other work assignments for people who she was told were being

14 trained. Siam Depo. at 66: 14-25.

15        Plaintiff also alleges Bernadine Faison chose someone other than her to attend a training

16 sometime in the 1990s.. Siam Depo. 61:22-62:5.  Plaintiff claims that Faison almost certainly

17 knew Siam wanted to attend the training and that Faison still chose someone else.  Siam Depo. at

18 61.  Siam does not know one way or the other whether Faison actually considered whether Siam

19 should go on the training. Siam Depo at 62: 20-23.

20        Faison denies making decisions so as to exclude plaintiff or others from her race, national

21 origin.  Faison was unaware that plaintiff engaged in any EEO activity until the after May of

22 1999.  Plantiff never discussed her lack of training with any management official that she can

23 recall. Saim Depo. at 153.

24                3.       Selection for Details

25        Details are short-term assignments.  During the relevant period, details were handled

26 mostly by Bernadine Faison and were rarely posted.  Plaintiff claims that she received fewer

27 long-term details than others who were not both female and Filipino.  Plaintiff notes that she did

28

CROSS-MOTION FOR SUMMARY JUDGMENT
C 04-0129 MHP            5

1   not receive a "Level 21" detail that became available shortly after the reorganization that put her

2   in into the same unit with William Norris under Bernadine Faison's supervision.  Siam Depo. at

3   82: 3-12.  William Norris received the detail.  Siam Depo. at 81:10- 82:20.  Plaintiff does not

4   deny that Faison made an appropriate decision for this first detail. Siam Depo at 82: 3-12.

5            Nevertheless, plaintiff alleges she should have received the second detail that William

6   Norris received.   She claims she had more training in management than Norris and that she

7   nevertheless was not offered the job.  Siam Depo. at 83:25- 84:4.  Plaintiff alleges that Faison

8   would have known about the superior management experience because by then, Faison had seen

9   the earlier Tatum evaluation.  Siam Depo. at 84.  Plaintiff surmises that Faison had seen the

10  Tatum evaluation.  Plaintiff reached this conclusion because plaintiff saw the evaluation with a

11  Post-it Note on it and the Post-it Note had Faison's handwriting.  Plaintiff believes Faison

12  reviewed Tatum's evaluation and wrote a note to Norris stating "Bill, we need to talk about this."

13  Siam Depo. at 85. Absent the note on the evaluation, Siam does not know what information

14  Faison had at the time the selection for the detail was made. Siam Depo. 87:9:13.

15           Plaintiff acknowledges that a male Filipino, Gerald Dumaguit, received significant long-

16  term details.  In April 1999,  Bernadette Faison, selected Gerald Dumaguit (an Asian, Filipino,

17  male) to be detailed to the position.  Plaintiff did not deny that she told persons that she did not

18  want the position. Admin Depo at 89:21-90:3, 19-23.   Faison also states that Dumaguit was

19  chosen in part because Siam was not on speaking terms with half the workers in the office and

20  therefore lacked the skills to manage the office.

21           Plaintiff also acknowledges that Faison selected her for long-term details to Seattle and to

22  Houston.

23                   4.       Discipline

24           Plaintiff alleges she was subjected to a hostile work environment and was subject to

25  sexual harassment because White and African American employees (both male and female) were

26  permitted to arrive to the office late, leave the office during working hours for hours at a time,

27  appear to work with alcohol on their breath and verbally abuse plaintiff.  *Complaint*.  Plaintiff

28

1   alleges management was aware of, but imposed no consequences for, such behavior. *Id*.

2       Plaintiff acknowledges that a sign-in, sign-out sheet was instituted (in part because she

3   recommended it) in order to better control the whereabouts of the counselors and investigators in

4   the office.

5       Plaintiff characterizes two incidents as "assaults." The first involves Brian Hemenway.

6   Plaintiff claims that Hemenway told her in front of many workers "You don't know what you're

7   talking about." You don't even know what sexual harassment is." Siam Depo. at 161-162.

8   Plaintiff claims she was embarrassed by the incident. Siam Depo. at 162: 1-3.

9       The second assault involves when William Norris raised his voice at a "focus group."

10  Siam Depo at 172. At the focus group meeting, Norris pounded his fist and asked Siam, "Why

11  are you lying?" Siam Depo 173:1-6. Norris was told that personal attacks were not welcome and

12  then did not "say much after that . . .." Siam Depo. at 176: 20-25.

13      B.   EEO Case Number HO-0004-01

14      Plaintiff filed her second formal complaint on February 12, 2001 claiming she had been

15  discriminated or retaliated against with respect to three issues: (1) she was denied opportunities

16  for higher level assignments; (2) she was not afforded the opportunity to apply for a Level 21

17  position because the position was restricted to employees of the Postal Service's Pacific Area and

18  was improperly given to co-worker Bill Norris; (3) she was not afforded the opportunity to apply

19  for a Level 23 position because the position was restricted to employees of the Postal Service's

20  Pacific Area.

21          1.   Denial of higher level assignments

22      Plaintiff alleges other persons in the office received details to higher levels for more than

23  thirty days. USPS regulations require that a person detailed to a higher position for more than

24  thirty days must receive an increase in pay.

25      One detail to which plaintiff was not selected was the EAS-21 position awarded to

26  Hemenway by Maria T. Robinson. Simmons Decl., Exh. 3, Affidavit of Maria Robinson. Siam

27  stated she did not want the position because she would not work in the same office with William

28

1    Norris. Plaintiff does not deny that this occurred.

2              2.      The Level 21 position.

3          In connection with a Restructuring of the EEO function in 2000, all the EAS-19 managers

4    (including Siam, Norris and Martinez) were invited to select managerial positions in Sacramento

5    or San Francisco or to stay in the Pacific Area Office with a downgrade in position.  Norris

6    decided not to move from the Area Office and to accept a downgrade in position.  Shortly

7    thereafter, the Level 21 position was posted with a restriction that only Pacific Area employees

8    may apply.  Plaintiff alleges the restriction on the Level 21 position (and Norris' decision to

9    accept a temporary downgrade) was to ensure Norris was selected.

10         The selection was made by Maria Robinson. Affidavit of Maria Robinson.  Robinson

11   established that the restriction was put in place to comply with "RIF Avoidance" procedures in

12   effect throughout the Western Region.  She denies conferring with Norris prior to his decision to

13   stay with the Regional Office or prior to posting the vacancy.  Norris denies knowing the position

14   would become available when he made his decision to take the downgrade.  Norris establishes

15   that he would have been paid the same regardless.

16             3.      The Level 23 position.

17         Plaintiff claims that the Level 23 position was posted with a restriction to ensure she

18   could not apply.

19         C.     EEO Case Number HO-0087-01

20         Plaintiff's third administrative complaint alleged continued harassment from Norris and

21   another co-worker (Judy Martinez) as well as harassment because her picture was posted in the

22   security office of the USPS building where she worked.

23         Holly Bedell, a district manager of human relations, states that posting is appropriate

24   because plaintiff was off duty for more than 21 days and assumed off-duty status due to a claim

25   of stress related to her work environment.  Bedell stated that Plaintiff needed medical clearance

26   before returning to the facility.  Bedell denies having any knowledge of any of plaintiff's EEO

27   activity prior to participating on the decision to post her picture.

28

D.    EEO Case Number HC-0010-02

Plaintiff's fourth administrative complaint alleges (1) she had been excluded from the Postal Service's variable pay program, known as the "EVA" program and (2) she never received notification she was eligible to apply for reimbursement of overtime.

a.    Exclusion from the EVA

The EVA program was a performance-based bonus program available to most non-bargaining unit employees.  The performance was measured each fiscal year against quantifiable benchmarks set at the outset of each fiscal year.   The Postal Service's policy addressing its EVA Variable Pay program provides that employees who do not fully contribute to the performance of the Postal Service during a respective fiscal year will be excluding from receiving positive credits to their EVA reserve account.

Plaintiff worked approximately two weeks in January 2001.  Due to her absence, the Pacific Area Human Resources Office determined that she was ineligible for the EVA program for that year.  Furthermore, as the EEO Investigative Report reveals, similarly-situated employees outside of each of Plaintiff's claimed protected classes were also excluded from the EVA program for similar reasons.

b.    Overtime

This claim arises from an agreement between the USPS and its employees to settle FLSA claims arising from a misclassification of certain EEO personnel.  According to the agreement, EEO personnel were given an opportunity to apply for overtime.  Plaintiff claims she failed to receive the notification.

III.    ANALYSIS

A.    The Summary Judgment Standard

The requirements for summary judgment under Rule 56(a), Fed. R. Civ. Proc., are well known.  Generally, as described in 10A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2727,

. . .  It is well-settled that the party moving for summary judgment has the burden

CROSS-MOTION FOR SUMMARY JUDGMENT
C 04-0129 MHP                              9

of demonstrating that the Rule 56(c) test  – "no genuine issue as to any material fact" – is satisfied and that the movant is entitled to judgment as a matter of law. The movant is held to a stringent standard.  Before summary judgment will be granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant.  Because the burden is on the movant, the evidence presented to the court always is construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it.  Finally, facts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true. [Footnotes omitted.]

B.   Plaintiff's Title VII claims are meritless

1.   None of the claims in the first administrative complaint (<u>EEO Case Number HO-0111-99</u>) are viable

a.   The claims in the first administrative complaint are untimely

Plaintiff first sought EEO counseling on April 29, 1999 and filed her first formal complaint on September 4, 1999.  All the alleged events before March 30, 1999 (i.e., more than 30 days prior to April 29, 1999) are untimely.  *See* 29 C.F.R. § 1614.105(a)(1); *Cooper v. Bell*, 628 F.2d 1208, 1211 (9th Cir. 1980).

b.   Even if timely, the claims in the first complaint are meritless.

Title VII prohibits discrimination by an employer on the basis of race, color, religion, gender, or national origin when making employment decisions.  42 U.S.C. § 2000e-2(a).  In general, a plaintiff may show violation of Title VII by proving either disparate treatment or disparate impact.  *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).  The plaintiff in a Title VII action bears the burden of establishing a prima facie case of employment discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff's complaint alleges disparate treatment.

Under the disparate treatment theory of liability, the issue is whether the defendant intentionally discriminated against the plaintiff.  *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 599 (9th Cir. 1993).  The plaintiff therefore must produce sufficient evidence to support an inference of discrimination.  In a disparate treatment case, a Title VII plaintiff can make out a prima facie case either by offering direct evidence of a discriminatory motive or through

1    circumstantial evidence using the formula set forth in *McDonnell Douglas v. Green*, 411 U.S.

2    792 (1973).

3            Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff must first establish a

4    prima facie case of discrimination.  For purposes of summary judgment, a plaintiff must produce

5    evidence that "give[s] rise to an inference of unlawful discrimination."  *Texas Dep't of*

6    *Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Messick v. Horizon Indus.*, 62 F.3d

7    1227, 1229 (9th Cir. 1995).  Once the prima facie case has been made, the burden shifts to the

8    defendant to show that its employment decision was taken for a legitimate, non-discriminatory

9    reason.  *Burdine*, 450 U.S. at 254.  If the defendant makes this showing, the burden then shifts

10   back to the plaintiff to demonstrate that the employer's alleged reason for failing to promote or

11   hire the plaintiff was pretextual.  Id. at 253-56.  The ultimate burden of persuading the trier of

12   fact that the defendant intentionally discriminated against the plaintiff remains at all times with

13   the plaintiff.  *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993) (quoting *St. Mary's*

14   *Honor Ctr. v. Hicks*, 113 S.Ct. 2742, 2747 (1993)).

15           Here, plaintiff has failed to establish the prima facie case.  There is literally no evidence

16   that other persons were treated differently than plaintiff.  Equally as important, there is no

17   evidence that any particular *supervisor* or other decision-maker treated any other employee

18   differently than Siam.   Accordingly, Defendant is entitled to judgment on Siam's Title VII

19   claims:

20                             i.        The awards in 1993 and 1994.

21           Plaintiff can point to no evidence that she received less than any other employee.

22   Moreover, plaintiff cannot present evidence of any particular award to which she was entitled

23   and which she nevertheless did not receive.   Plaintiff does not know of anyone in fiscal year

24   1993 who worked under the same supervisor,  Bernadine Faison, who received a cash bonus for

25   an Outstanding evaluation.  Siam Admin depo at 80:14-18, Deposition at 61.

26           Similarly, with respect to 1994, plaintiff cannot demonstrate a prima facie case.  Here

27   again, plaintiff can show no comparative analysis demonstrating the number of awards by the

28

CROSS-MOTION FOR SUMMARY JUDGMENT
C 04-0129 MHP                          11

1    race, EEO activity and national origins of recipients.  Plaintiff has made no attempt to

2    demonstrate that the persons recommending as opposed to granting such awards are motivated by

3    an improper bias.  Plaintiff's claim must fail.  Plaintiff has failed to show that individuals outside

4    her protected class were treated differently.  Therefore, Plaintiff failed to meet her burden of

5    demonstrating intentional race-based, gender-based or national origin-based discrimination.

6    *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988).

7        Further, the Faison affidavit demonstrates defendant had a legitimate non-discriminatory

8    reasons for the decisions.  *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

9    Plaintiff failed to demonstrate that any decision was pretextual. Accordingly, defendant is

10   entitled to summary judgment with respect to these claims.

     ii.  Plaintiff failed to present a prima facie case that she was
        treated disparately with respect to training.

12       Plaintiff has failed to show that individuals outside her protected class were treated

13   differently.  Her evidence on this point is speculative, at best.  Further, plaintiff will be unable to

14   present evidence to demonstrated that defendant's legitimate, non-discriminatory reasons for any

15   particular training decision as pretextual.  *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th

16   Cir.1994).

     iii.  Plaintiff failed to show that she received fewer or less
        desirable details.

19       Plaintiff has presented no evidence that Faison or Sims made selections that were

20   discriminatory or that the legitimate, non-discriminatory reasons for any particular selection was

21   pretextual.  *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

22       Similarly, with respect to the april 1999 detail, plaintiff filed to establish a prima facie

23   case.  Plaintiff did not deny that she told persons that she did not want the position.  At her first

24   deposition, she state she did not recall whether she told Norris that.  Admin Depo at 89:21-90:3,

25   19-23.  Similarly, Faison says that she questioned Siam about the position and Siam stated she

26   was not interested.  Faison also states that Dumaguit was chosen in part because Siam was not on

27   speaking terms with half the workers in the office and therefore lacked the skills to manage the

1    office.   This claim therefore should not survive a motion for summary judgment.

2                                iv.    Plaintiff did not show harassment

3           To prevail on her hostile environment claim, Siam is required to establish a "pattern of

4    ongoing and persistent harassment severe enough to alter the conditions of employment." *Draper*

5    *v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1108 (9th Cir.1998). To satisfy this requirement, Siam

6    needs to prove that her workplace was "both objectively and subjectively offensive, one that a

7    reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be

8    so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662

9    (1998).  In addition, Siam is required to prove that any harassment took place "because of sex."

10   *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201

11   (1998). When harassment by co-workers is at issue, the employer's conduct is reviewed for

12   negligence. *Nichols v. Azteca Restaurant Enterprises, Inc*., 256 F.3d 864, 875 (9ᵗʰ Cir. 2001).

13          Plaintiff has demonstrated, at best, a failure to get along with certain employees including

14   William Norris and Judy Martinez.  Plaintiff presents no evidence that women were treated

15   differently than men (nor that Filipinos were treated differently from non-Filipinos).  Plaintiff has

16   not demonstrated an alteration in her conditions of employment.  Defendant is entitled to

17   judgment on this claim.

18                      2.    None of the claims in the other administrative complaints are viable.

19                            a.    There is no evidence that any selection was made on an improper
                                  basis.
20          Plaintiff's claims fail from a complete failure of proof.  There is no claim that has

21   evidence to support a prima facie case.

22          Defendant has, in each instance demonstrated a legitimate, non-discriminatory reason for

23   the challenged decision.  With respect to the selections, the declarations of Bernadine Faison and

24   Maria Robinson establish that they made decisions based upon the qualifications of the

25   candidates.  Neither of these two individuals were responsible for restricting the applications to

26   Pacific Area employees.  There is no evidence of pretext. *See Wallis v. J.R. Simplot Co.,* 26 F.3d

27   885, 889 (9th Cir.1994).  Accordingly, defendant is entitled to judgment on these claims.

28

1        b.        Plaintiff's EVA complaint is meritless.

2        The EVA program was a performance-based bonus program available to most non-

3    bargaining unit employees.  The performance was measured each fiscal year against quantifiable

4    benchmarks set at the outset of each fiscal year.   The Postal Service's policy addressing its EVA

5    Variable Pay program provides that employees who do not fully contribute to the performance of

6    the Postal Service during a respective fiscal year will be excluding from receiving positive credits

7    to their EVA reserve account.

8        Plaintiff worked approximately two weeks in January 2001.  Due to her absence, the

9    Pacific Area Human Resources Office determined that she was ineligible for the EVA program

10   for that year.  Furthermore, as the EEO Investigative Report reveals, similarly-situated employees

11   outside of each of Plaintiff's claimed protected classes were also excluded from the EVA

12   program for similar reasons.  Plaintiff has failed to demonstrate that she was treated differently

13   from any other person, much less a person in a protected class.  Equally as important, plaintiff

14   has not demonstrated that any person was aware of her race, national origin or sex when any

15   relevant decision was made.  Defendant is entitled to judgment on this claim.

16        c.        Plaintiff's FLSA claim is meritless

17        An employee may bring an action in federal district court seeking payment of wages due

18   under the minimum wage provisions of the FLSA. 29 U.S.C. § 216(b); *Barrentine v. Arkansas-*

19   *Best Freight System,* 450 U.S. 728, 745 (1981).  Plaintiff must prove her "primary duties"

20   consisted of non-exempt work.  *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (explaining the

21   "primary duty" component of the FLSA duties test).

22        Here, Plaintiff cannot demonstrate her work was primarily non-exempt. As an EAS Level

23   19 Manager, EEO Dispute Resolution Plaintiff's work meets the three-part test required to

24   establish a position's exemption from the FLSA.  She was paid on a salaried basis.  Her work, as

25   her title reflects, involved the performance of office or non-manual work related to management

26   policies.  Moreover, she was required to exercise discretion and independent judgment. *See*

27   *Bothell v. Phase Metronics*, 299 F. 3d 1120, 1129 (9th Cir. 2002) ("The requirement that an

28

CROSS-MOTION FOR SUMMARY JUDGMENT
C 04-0129 MHP                              14

employee 'customarily and regularly exercise[ ] discretion and independent judgment' is satisfied if the employee has the ability to compare evaluate and choose from possible courses of conduct.").  Accordingly, defendant is entitled to judgment on this claim.

## IV.   CONCLUSION

Defendant is entitled to summary judgment on all plaintiffs claims.

Respectfully submitted,
KEVIN V. RYAN
United States Attorney


Dated: March 14, 2005                               _____
                                                          /s/
                                                   ABRAHAM A. SIMMONS
                                                   Assistant United States Attorney