KEVIN V. RYAN (SBN 118321)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney
ANDREW Y.S. CHENG (SBN 164613)
Assistant United States Attorney

     U.S. Attorney's Office/Civil Division
     450 Golden Gate Avenue, 10th Floor
     San Francisco, California 94102-3495
     Telephone:    (415) 436-6813
     Facsimile:    (415) 436-6748

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| LINA S. SIAM, | ) | No. C 04-00129 MHP |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S TRIAL BRIEF** |
| v. | ) | |
| | ) | Pretrial:    September 21, 2005 |
| JOHN E. POTTER, | ) | Time:    2:30 p.m. |
| | ) | Courtroom:  15, 18th Floor |
| Defendant. | ) | Trial Date:  October 4, 2005 |
| | ) | |

## I.    INTRODUCTION

In this Title VII case, there are two adverse employment decisions at issue: (1) Bernedine Faison's decision to give a detail for an EAS-21 position to Gerald Dumaguit instead of Lina Siam; and (2) Maria Robinson's decision to promote William Norris to an EAS-21 position, instead of Lina Siam.

While plaintiff has alleged other instances in which she purportedly applied for promotions or was denied details, none of these fall within the relevant time period.  Others simply did not occur.

The issue for the jury is ultimately whether race/national origin or gender was a motivating factor in either of the two above-named decisions.  Plaintiff will fail to prove her claims by a preponderance of the evidence.

II.     **FACTUAL BACKGROUND**

Plaintiff Lina Siam was employed by the United States Postal Service ("USPS") as a Senior EEO Complaints Processing Specialist, at the EEO Center in San Francisco, California. During the relevant period, she was a level EAS-17 employee.  The Court has previously summarized plaintiff's contentions for the purposes of summary judgment.  At trial, the following additional facts are important:

As noted above, only two adverse decisions occurred within the period of March, 1999 to January, 2001, which this Court has identified as the relevant period for plaintiff's disparate treatment claim.  The first decision was Faison's selection of Gerald Dumaguit, an Asian-American male, rather than Siam for an EAS-21 detail.  The second decision was Robinson's selection of William Norris (a white male) rather than Siam for a promotion to an EAS-21 position.

Siam may also claim at trial that Brian Hemenway obtained an EAS-21 detail that she wanted and/or that Hemenway was promoted.  Siam previously has contended that this occurred in May of 2000.  Brian Hemenway will testify that he never worked at an EAS-21 detail, that he was never promoted from his EAS-17 position and that he left the employment of USPS in April, 2000– thus, one purported detail that he is alleged to have gotten simply did not occur.

III.    **ISSUES AT TRIAL**

In its Order regarding the cross-motions for summary judgment, the Court set forth the remaining issues in this case: whether Brian Hemenway and William Norris (both white males) received details or promotions instead of plaintiff because of race and gender discrimination. The Court concluded that plaintiff is "entitled to go to a jury on the question of liability for discriminatory failures to promote during the period spanning March of 1999 to January of 2001."  Order, at 19.  This court further ruled that plaintiff will be permitted to submit evidence, to the extent it exists, that (1) Norris and Hemenway were allowed to take extended details (thus enhancing their promotability) instead of plaintiff because of her race and gender; (2) management "changed the rule" on an available EAS-21 position that Norris ultimately received instead of plaintiff and (3) Bernedine Faison had an active bias against plaintiff and

1    other Asian employees.  The Court specifically noted that plaintiff's evidence "is not

2    overwhelming."  *Id*.  The Court dismissed all remaining claims of plaintiff's complaint.

3          In preparing for the pretrial conference, plaintiff has suggested that at trial she will seek to

4    submit evidence regarding numerous additional claims.  Specifically, plaintiff now insists she

5    may bring a Title VII claim for "[denial of] certain employment benefits, including overtime,

6    training, promotions, awards, higher level assignments, participation in the [Variable] Pay

7    Program, posting [of] her picture inappropriately to prevent her entry into the workplace,

8    [allowing] co-workers' angry and violent confrontations and verbal attacks during meetings,

9    discriminatory comments between supervisors and managers, racist/sexist comments, false

10   accusations, failing to investigate her EEO Complaints and constructive discharge at the United

11   States Postal Service."  Defendant contends that each of these claims has been dismissed and

12   only certain evidence related to higher level assignments is even arguably relevant.  Defendant

13   addresses these concerns in his motions in limine filed herewith.

14   **IV.   PLAINTIFF WILL BE UNABLE TO MEET HER BURDEN OF PROOF**

15         At trial, the plaintiff must prove, by a preponderance of the evidence, a prima facie case

16   of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If plaintiff

17   meets this burden, defendant will have the burden of articulating a legitimate, nondiscriminatory

18   reason for refusing to hire or promote, or for terminating an employee. *Id*.  The ultimate burden

19   of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

20   remains at all times with the plaintiff.  *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993)

21   (quoting *St. Mary's Honor Ctr. v. Hicks*, 113 S.Ct. 2742, 2747 (1993)).  Here, plaintiff will be

22   unable to meet her burden with respect to either of the two adverse employment decisions at

23   issue.

24         1.   The April 1999 detail

25         Plaintiff intends to submit evidence that Faison should have chosen her, rather than

26   Dumaguit, for a detail to the EAS-21 position in April 1999.  Siam has contended she was more

27   qualified than Dumaguit and that the selection of Dumaguit was the last of a long line of

28   decisions made by Faison that demonstrated she did not want to give opportunities to Asians.

1    Nevertheless, the evidence will show the detail became available when Carl Thomas

2    returned to Southern California after having performed the detail for the previous 6-7 months.

3    The position required that the person selected manage the office where each of the

4    counselor/investigators worked.  Defendant will submit evidence that Faison made her decision

5    to put Dumaguit in the position only after Siam made clear she did not want the job.  Moreover,

6    the evidence will show Faison received and reasonably relied upon a recommendation from

7    Thomas that Dumaguit was the right person for the job.  Defendant also will submit evidence to

8    demonstrate Faison had no bias against Asians and that each of Siam's claims regarding racism

9    and sexism is meritless.

10           2.      The September 2000 Promotion

11    Plaintiff intends to submit evidence that Robinson chose William Norris, rather than

12    Siam, for a promotion in September of 2000.  Plaintiff has not made her theory on this selection

13    clear.  At times, plaintiff has claimed that Robinson instructed Norris to take a position in the

14    Area Office so that he would be the only person eligible to apply.  Alternatively, plaintiff has

15    contended that Robinson somehow managed to manipulate the job announcement process in

16    Washington, D.C. so as to change the rules on who could apply for the job.  To date, plaintiff has

17    submitted only her hypothesis in support of either theory.

18    Defendant will submit evidence that neither Robinson nor Norris manipulated the process

19    to ensure Norris would get the job.  Instead, Norris will testify that he took the job of "Area

20    employee[1]" without knowledge that an opportunity for promotion would arise.  Robinson also

21    will testify that she did not instruct Norris to take a position as an Area employee in order to

22    ensure he would qualify for the job.

23    / / /

24    / / /

25    / / /

26    / / /

27

28           [1]      Norris chose to stay in San Francisco and become an "Area employee" rather than
      move to Sacramento and become a "District employee."

DEFENDANT'S TRIAL BRIEF,
C 04-00129 MHP                          4

**V.     ANALYSIS OF DAMAGES**

1.     <u>This Court should severely limit the evidence of damages presented to the jury.</u>

Defendant is filing herewith a motion to bifurcate the liability and damages portions of this trial.  Nevertheless, even if this Court concludes that the damages portion of this trial should be tried at the same time, this Court still should limit the evidence of damages that is submitted to the jury.

Congress waived sovereign immunity to allow juries to determine compensatory damages.  42 U.S.C. § 1981a(c)(1).  The courts retain jurisdiction to resolve claims for equitable relief.  Generally, the jury first resolves the issues of liability and legal relief, and then later the court determines whether equitable relief is appropriate, with or without a supplemental hearing.  *Sailor v. Hubbell, Inc.*, 4 F.3d 323, 325 (4th Cir. 1993).[2]  In this case, plaintiff requests legal relief in the form of damages for emotional distress.  The remainder of plaintiff's requests are equitable in nature.  Accordingly, the jury should hear only evidence of plaintiff's emotional distress for not having received either the detail or promotion.

Moreover, plaintiff's evidence of emotional distress is minimal.  Emotional injuries (above a nominal amount) are not assumed to result from unlawful job discrimination, but must be separately and affirmatively proved by competent evidence showing the nature and extent of a specific discernible injury to the plaintiff's emotional state.  *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978); *Giles v. General Electric Co.*, 245 F.3d 474, 488 (5th Cir. 2001); *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998), *cert. denied*, 525 U.S. 1105 (1999).  Here, if the jury

[2]     The use of advisory juries in discrimination cases is not favored and should be restricted to exceptional cases where there are peculiar and unique circumstances supporting its use.  *Moss v. Lane Co., Inc.*, 471 F.2d 853 (4th Cir. 1973).  Even when necessary an advisory jury can be used, the court must make its own findings and conclusions on the equitable issues.  Rules 39(c) and 52(a), Federal Rules of Civil Procedure; *Kolstad v. American Dental Ass'n*, 108 F.3d 1431, 1440 (D.C.Cir. 1997).  There is no justification for an advisory jury in this case.  There is nothing peculiar about this case which would make the jury's advice particularly helpful in this case.  Moreover the evidence in this case is susceptible to a separation of the issues-- evidence of plaintiff's wages simply need not be placed before the jury.  Accordingly, defendant requests that no evidence regarding plaintiff's equitable claims (i.e., for back pay, front pay, etc.) be provided to the jury.

finds in favor of plaintiff with respect to liability, the only relevant and non-cumulative evidence regarding damages would be plaintiff's testify regarding the distress she suffered as a result.

Plaintiff may attempt to submit evidence that she became depressed and began to see a psychologist has a result of not being selected for one or both of the positions at issue here.  This evidence should be excluded.  Even if plaintiff had designated an expert to demonstrate that her depression was related to the workplace, the expert's testimony would have to address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant. *See, e.g., Magistrini v. One Hour Martinizing Dry Cleaning,* 180 F.Supp.2d 584, 609 (D.N.J.2002) ("While an expert is not required to rule out all alternative possible causes of a plaintiff's disease, 'where a defendant points to a plausible alternative cause and the doctor offers no reasonable explanation' for why he still concludes that the chemical was a substantial factor in bringing about the plaintiff's disease, 'that doctor's methodology is unreliable' ") (quoting *Paoli,* 35 F.3d at 759-60)); *see also Diaz v. Johnson Matthey, Inc.,* 893 F.Supp. 358 (D.N.J.1995) (excluding expert medical testimony on issue of specific causation where physician "did little, if anything, to rule out alternative causes" and either "ignored" or offered "no satisfactory reason" for discounting "several alternative possible causes" for plaintiff's asthma identified by defendant); *Munafo v. Metropolitan Transp. Authority,* 2003 WL 21799913, *18 (E.D.N.Y.2003).  Here, plaintiff has not designated a single expert and has not otherwise established why her depression was not caused by any of the acts that were alleged as part of her dismissed claims.  Accordingly, plaintiff should be precluded from claiming damages related to her treatment for depression.

       2.      <u>Plaintiff's claim for equitable relief in the form of back pay.</u>

Back pay is designed to restore plaintiff to the position she would have been in but for the discrimination or retaliation. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995); *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000).  With respect to establishing monetary loss for purposes of equitable relief, plaintiffs bear the burden of proof. *Gotthardt v. National Railroad Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999).  Here, plaintiff will attempt to demonstrate that she received less pay because she did not receive either

the detail of the promotion.  Defendant will demonstrate that the difference in pay was minimal.

Plaintiff's back pay claim also is subject to mitigation.  A Title VII plaintiff seeking either back pay or front pay has a statutory duty to mitigate front pay and back pay by exercising reasonable diligence to secure other suitable employment and to maintain a suitable job once it is obtained. *See* 42 U.S.C. § 2000e-5(g)("[i]nterim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable.").[3]  Plaintiff must show she is ready, willing, and available for work. *Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985)(plaintiff failed to mitigate when she returned to school voluntarily to enhance her earning power without first searching for employment).  Here the evidence will show plaintiff has not taken reasonable steps to remain in the workforce.

Finally, even if plaintiff is entitled to back pay, the government is entitled to an offset for any federal payments she received.  Because the federal government is the source of such payments, the collateral source rule does not apply. *Smith v. Office of Personnel Management*, 778 F.2d 258, 263 (5th Cir. 1985), *cert. denied*, 476 U.S. 1105 (1986). Further, a failure to offset would unjustly enrich a Title VII plaintiff by allowing a double recovery against the government, thus undercutting Title VII's goal to make a victim of discrimination or retaliation whole, but not better off than he would have been but for the unlawful employment action. 42 U.S.C. § 1981a(b)(2); *McLean v. Runyon*, 222 F.3d 1150, 1156 (9th Cir. 2000)(because agency pays FECA benefits, collateral source rule does not apply; offset to back pay award upheld); *Nichols v. Frank*, 42 F.3d 503, 514-15 (9th Cir. 1994)(court allowed offset to back pay of amount paid to plaintiff as FECA benefits).

/ / /

/ / /

---

[3]      Of course, back pay also is subject to limitation if plaintiff is unable to work. Back pay can be cut off if the employee would otherwise have been discharged or if she is disabled or deceased prior to judgment. *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 144-45 (2d Cir. 1993)(period of disability excluded from back pay), *cert. denied*, 510 U.S. 1164 (1994).  Here, plaintiff has been receiving unemployment benefits even though her job has been reorganized out of existence.

1    The evidence will show plaintiff is not entitled to any other form of equitable relief.

2  DATED: September 14, 2005                    Respectfully submitted,

3

4                                              KEVIN V. RYAN
                                               United States Attorney
5

6                                              _____

7                                              ANDREW Y.S. CHENG
                                               ABRAHAM S. SIMMONS
8                                              Assistant United States Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28