UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINA S. SIAM, | No. C 04-00129 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| JOHN E. POTTER, POSTMASTER GENERAL, | **Re: Motion for New Trial** |
| Defendant. | |

Plaintiff Lina Siam brought this action against John E. Potter, in his official capacity as Postmaster General of the United States Postal Service ("USPS"), alleging discrimination based on her race and national origin, as well as her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq. The parties appeared before this court for a two-week jury trial, at the conclusion of which the jury returned a verdict for defendant. Now before the court is plaintiff's motion for judgment as a matter of law, or for a new trial. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

BACKGROUND

The background of this action is set forth in considerable detail in this court's previous order on the parties' cross-motions for summary judgment and need not be repeated in full here. Plaintiff Lina Siam worked for the USPS between 1977 and 2001, beginning as a letter sorting machine operator and rising to the position of Senior EEO Complaints Processing Specialist at the EEO

Center in San Francisco, California—a position plaintiff held from 1993 to 2001. Plaintiff has received many awards throughout her career for the quality of her work.

The instant lawsuit is based on plaintiff's allegations that a glass ceiling for Asian/Filipina females blocked her advancement within the USPS after 1993. She alleges that intersectional discrimination on the basis of her race and national origin, on the one hand, and her gender, on the other, have denied her training opportunities, performance awards, desirable temporary assignments, opportunities to compete for promotions, participation in a bonus pay program, and information about entitlement to overtime backpay.

Only one of plaintiff's claims survived defendant's motion for summary judgment: plaintiff's claim under Title VII that she was denied several opportunities for advancement in her position during 1999 and 2000 as a result of discrimination based on the combination of her race, national origin, and gender. The alleged opportunities for advancement fall into two categories. The first—so-called "details"—were short-term opportunities to take on the responsibilities of a higher level position. For details lasting longer than 30 days, employees received additional compensation. The second missed opportunity was a permanent promotion to a Level 21 position, two levels higher than plaintiff's Level 19 position, which became available when the Postal Service EEO was reorganized in 2000. Plaintiff was not offered any of the details or the promotion.

The parties presented evidence on the issue of defendant's liability to a jury during a two-week trial in October, 2005. After approximately two hours of deliberation, the jury returned a unanimous verdict in favor of defendant. Plaintiff timely filed the instant motion for judgment as a matter of law or for a new trial, alleging numerous errors in this court's handling of plaintiff's claims.

LEGAL STANDARD

I.      Judgment As a Matter of Law

Under Federal Rule of Civil Procedure 50, a court may grant judgment as a matter of law on any claims for which "there is no legally sufficient evidentiary basis for a reasonable jury to find for

2

that party on that issue." Fed. R. Civ. P. 50(a)(1).  In ruling on a motion for judgment as a matter of law pursuant to Rule 50, a court must consider all evidence presented, drawing all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 151 (2000).  In evaluating this evidence without making credibility determinations, the court must "disregard any evidence favorable to the moving party which the jury is not required to believe." <u>Id.</u> at 152.

II.   <u>New Trial</u>

Federal Rule of Civil Procedure 59(a) provides that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  A new trial is appropriate to prevent "fundamental unfairness or a miscarriage of justice." <u>City of Phoenix v. Com/Sys., Inc.</u>, 706 F.2d 1033, 1036 (9th Cir. 1983).  Such unfairness may be found where "the verdict [is] against the weight of the evidence, . . . the damages are excessive, or . . . [there were] alleged substantial errors in admission or rejection of evidence or instructions to the jury."  <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251 (1940).  Determining whether such unfairness exists is left to the "sound discretion" of the district court. <u>Id.</u>; <u>Alma v. Manufacturers Hanover Trust Co.</u>, 684 F.2d 622, 625 (9th Cir. 1982) (district court determination may be reversed only if appellate court has "definite conviction that conclusion was a clear error of judgment") (non-jury trial).

DISCUSSION

Plaintiff seeks judgment as a matter of law or a new trial on four distinct bases.  First, plaintiff argues that this court's summary judgment ruling, which eliminated several of plaintiff's claims from the lawsuit, was erroneous.  Second, plaintiff argues that defendant's failure to produce certain documents unfairly prejudiced plaintiff, and that the court compounded the prejudice by failing to instruct the jury that it could draw an adverse inference based on defendant's failure to produce the documents in question.  Third, plaintiff argues that various rulings by the court during

3

the course of pretrial proceedings and trial were erroneous and highly prejudicial to plaintiff's case. Fourth, plaintiff argues that the evidence presented at trial was so overwhelmingly in plaintiff's favor that the jury's verdict was in error. The court considers each contention in turn.

### I. Grant of Summary Judgment

To the extent that plaintiff seeks reconsideration of this court's grant of partial summary judgment on certain of plaintiff's claims—her Title VII backpay claim, her claim for retaliation, her hostile work environment claim, and her claims under the Fair Labor Standards Act, 29 U.S.C. section 201 et seq.—the court declines to revisit its previous ruling. The court's previous order sets forth the reasons for granting partial summary judgment in defendant's favor in great detail, and the reasons need not be revisited here. Plaintiff's motion for a new trial on these claims is therefore denied.

### II. Discovery Issues

Plaintiff moves for a new trial on the ground that defendant "stonewalled" and refused to produce documents relating to training opportunities during the period between 1993 and 1997. According to plaintiff, defendant's failure to produce those documents deprived plaintiff of the ability to prove that she was repeatedly denied training opportunities that were offered to her peers. Plaintiff argues that as a result of defendant's failure to produce additional training records, the court should have given an instruction to the jury explaining that defendant's failure could be viewed as an admission of liability.

In order to be entitled to an adverse inference instruction, plaintiff must first establish that defendant has materials in its possession, or is obligated to have materials in its possession, which it failed to produce. See, e.g., Hamilton v. Signature Flight Support Corp., No. C 05-00490, 2005 WL 3481423, at *8 (N.D. Cal. Dec. 20, 2005) (James, Magis. J.) ("[A] party seeking an adverse inference instruction based on the destruction of evidence must establish . . . that the party having control over the evidence had an obligation to preserve it at the time it was destroyed"). Here,

4

1  defendant has represented that it produced all relevant training documents in its possession. The
2  testimony plaintiff presented at trial does not contradict this assertion. Randall Sims testified that
3  some training records existed at some time in the past, and that these records would have provided
4  some information about the number of hours of training received by each employee, but did not
5  establish that the records still exist or that defendant failed to produce these materials to plaintiff.
6  Reporter's Transcript ("RT") at 241–44.

7  Assuming that defendants failed to produce the training records identified by Sims, plaintiff
8  also has not produced any "extrinsic evidence that the subject matter of the lost or destroyed
9  materials would have been unfavorable to [the spoliator] or would have been relevant to the issues of
10 this lawsuit." Hamilton, 2005 WL 3481423, at *8. Absent some indication that the evidence not
11 produced would have been favorable to the moving party, courts are reluctant to issue an adverse
12 inference instruction. The testimony elicited by plaintiff regarding training records provided no
13 information about their likely contents; Sims repeatedly stated that he did not recall having any
14 conversation about disparate levels of training with plaintiff. See, e.g., RT at 244:8–11 ("Q. So do
15 you recall having a discussion with her about training when she was looking at the printout of the
16 fiscal year of all of the EEO employees? A. I don't recall that specific conversation, no.").

17 The court also notes that the records in question would have little probative value in any
18 case, as they did not indicate the nature of the training received by EEO employees and apparently
19 only stated whether the required 20 hours per year of training had been completed. "Q. But the
20 final printout at the end of the year showing what training had occurred would list the nature of the
21 training, would it not? A. My recollection [is] it would only say that the person had the 20 hours
22 and it would have they had completed the 20 hours." Id. at 243:21–25.

23 Finally, the decision to issue an adverse inference instruction is within the sound discretion
24 of the trial court. Id. at 107. Here, defendant has offered evidence that plaintiff was lax in
25 requesting training documentation and in clarifying what documents she believed were missing. On
26 April 18, 2005 the court ordered the parties to meet and confer in order to clarify what additional
27 documents in defendant's possession might be produced. According to defendants, plaintiff did not
28

5

initiate any further conversation about the allegedly missing documents until August 17, 2005, nearly four months later. It would be unfair to issue an adverse inference instruction under these circumstances, where the failure to obtain additional documents is at least in part attributable to plaintiff's own lack of diligence.

Plaintiff's motion for a new trial on this basis is therefore denied.

III.   Fair Trial

    A.   Verdict Form

Plaintiff first claims that the verdict form approved by the court improperly limited the issues and evidence considered by the jury. The verdict form read as follows:

> 1. Plaintiff proved by a preponderance of the evidence that from March, 1999 to January, 2001, Bernadine Faison did not detail plaintiff to higher-level positions and that plaintiff's race or gender or national origin was a motivating factor in that decision. [yes / no]
>
> 2. Plaintiff proved by a preponderance of the evidence that from March, 1999 to January, 2001, Maria Robinson did not promote plaintiff to higher-level positions and that plaintiff's race or gender or national origin was a motivating factor in that decision. [yes / no]

The verdict form properly frames the issues that survived the parties motions' for summary judgment. In its summary judgment order, the court denied defendants' motion for summary judgment only as to plaintiff's failure to promote claims against Faison and Robinson for the period beginning in 1999: "Plaintiff has created triable issues as to whether defendant's denial of details in 1999 and 2000, and promotion in 2000, were animated by discrimination." The court granted defendant's motion for summary judgment as to all of plaintiff's other claims.

Moreover, the jury form does not, as plaintiff suggests, preclude the jury from considering as "background evidence" conduct which occurred prior to 1999. The form says nothing whatsoever about evidence. It properly limits the timeframe for the alleged failures to promote to the period between March 1999 and January 2001. Plaintiff's contention is therefore without merit.

B.     Exclusion of Damages Evidence

Plaintiff next argues that the court erred in bifurcating the trial into liability and damages phases because certain of plaintiff's damages witnesses—Dr. Robert Kaplan, Jose Siam, and plaintiff—would have presented testimony establishing that "Siam was severely depressed due to her hostile work environment and discriminatory treatment by managers and staff." Pl.'s Motion at 11.

As an initial matter, courts have substantial discretion in bifurcating trials in the interest of judicial economy, and bifurcation of damages from liability is commonplace. See, e.g., Bates v. United Parcel Serv., 204 F.R.D. 440, 448 (N.D. Cal. 2001) (Henderson, J.), appeal denied, 2002 WL 32615336 (9th Cir. Jan 17, 2002); Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc., No. SA CV 00-549-DOCEEX, 2001 WL 501354, at *3–*4 (C.D. Cal. May 4, 2001). Here, as the court noted in ruling on defendant's motion for summary judgment, although plaintiff put forth sufficient evidence to survive summary judgment or a directed verdict, the outcome of the liability phase was far from certain. Moreover, bifurcation in this case benefitted plaintiff considerably by allowing plaintiff to use the entire period of trial time previously allocated to liability and damages—ten hours—for the presentation of her liability case alone. The court therefore finds no error or prejudice in its decision to bifurcate.

As for the testimony that Dr. Kaplan allegedly would have offered, the court is unable to see how general testimony about plaintiff's "hostile work environment" and depression could have had any material effect on the jury's findings on the actual claims at issue. As the court noted when it ruled to exclude Dr. Kaplan's testimony, plaintiff failed to explain how Dr. Kaplan would be able to offer testimony about plaintiff's supervisors without relying on inadmissible hearsay. Dr. Kaplan's general testimony about plaintiff's work environment would be of little relevance, as the court previously granted defendant's motion for summary judgment on plaintiff's Title VII hostile work environment claim. Plaintiff does not allege that Dr. Kaplan or her husband had any personal knowledge of Faison or Robinson, or their treatment of plaintiff, beyond what plaintiff already

covered in her own testimony. The exclusion of Dr. Kaplan and plaintiff's husband cannot have had any prejudicial effect on the outcome of the case.

### C. Attendance by Bernadine Faison

Plaintiff argues, without citing any authority, that defendant's designation of Bernadine Faison as its representative in this litigation violated witness sequestration rules. According to plaintiff, Faison was not a proper representative because she is not currently employed by defendant. Plaintiff argues that Faison's presence in the courtroom unfairly aided defendant in rebutting the testimony of plaintiff's witnesses and had a chilling effect on those witnesses, many of whom previously worked under Faison.

The decision to exempt particular witnesses from an exclusion order, however, is within the discretion of the court. United States v. Oropeza, 564 F.2d 316, 326 (9th Cir. 1977), cert. denied, 434 U.S. 1080 (1978). In addition, Federal Rule of Evidence 615 does not permit a court to exclude a witness "whose presence is shown by a party to be essential to the presentation of the party's cause." Fed. R. Evid. 615(3). Here, although Faison is no longer employed by the Postal Service, she was in plaintiff's chain of supervision during the relevant time period and has knowledge which was absolutely central to the presentation of defendant's case. Permitting Faison to attend the trial was therefore appropriate.

### D. Adverse Inference Instruction

As discussed above, the court's refusal to issue an adverse inference instruction based on defendant's supposed discovery stonewalling was proper.

### E. Time Limits

Plaintiff argues that the court's imposition of a ten-hour time limit for presentation of her case-in-chief was unfairly restrictive given the complexity of the case and the magnitude of plaintiff's burden.

8

"Trial courts have broad authority to impose reasonable time limits. . . . Such limits are useful to 'prevent undue delay, waste of time, or needless presentation of cumulative evidence.'" Navellier v. Sletten, 262 F.3d 923, 941 (9th Cir. 2001), cert. denied sub nom McLachlan v. Simon, 536 U.S. 941 (2002) (citing Amarel v. Connell, 102 F.3d 1494, 1513 (9th Cir.1997)). The ten-hour limit was reasonable in this case for several reasons. First, despite plaintiff's argument that this case is exceptionally complex, it is far less complex than cases which have permitted both shorter and longer time limits. See Zivkovic v. Southern Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (two-day time limit was reasonable for trial on two issues: "(1) whether Zivkovic was offered and provided a reasonable accommodation; and (2) whether Edison failed to hire Zivkovic due to his disability."); Navellier, 262 F.2d at 941 (seven-day limit for presentation of a complex multi-plaintiff securities lawsuit, including damages); Amarel, 102 F.3d at 1499, 1513 (time limit of forty-six hours per side for "a complex, lengthy, and bitterly contested antitrust suit" was reasonable). Here, plaintiff presented testimony over the course of four days on a relatively narrow question: whether certain decisions made with respect to a single employee during a two-year period were motivated by impermissible racial and gender bias. Permitting over ten hours on the question of liability alone was more than reasonable.

Second, plaintiff's counsel is largely responsible for whatever time pressure she experienced during trial. As the court repeatedly noted, plaintiff's counsel had great difficulty with basic evidentiary procedures, such as laying the foundation for documents before publishing them to the jury. Her questioning was not focused, and as a result she wasted an undue amount of time. The court assisted plaintiff in presenting her case wherever possible and repeatedly admonished plaintiff's counsel to make wise use of her time. Time limits must be reasonable, but they need not make allowance for gross incompetence.

Third, although it is may be improper to adhere rigidly to time limits that are not practicable, here the court exercised considerable flexibility—by modifying the ten-hour limit to apply to plaintiff's liability case, rather than her entire case-in-chief, and then by permitting plaintiff to take additional time cross-examining key witnesses after plaintiff exhausted her allocated time through

9

incompetence and the presentation of minimally valuable testimony.  Cf. Amarel, 102 F.3d at 1513 ("Rigid and inflexible hour limits on trials, however, are generally disfavored.").

As observed by this court, the ten-hour time limit was not only reasonable, but necessary.

### F.    Prejudicial Comments Regarding Plaintiff's Evidence

Plaintiff's sole complaint with respect to the court's commentary on plaintiff's evidence is that the court found certain evidence to be "irrelevant."  Granting a new trial based on judicial misconduct or advocacy for a particular party is rare, and subject to a strict standard.  See, e.g., Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282, 1289 (9th Cir. 1984) ("a trial is unfair when the judge expresses his opinion as to an ultimate issue of fact in front of a jury or argues for one of the parties in the suit" (quoting Maheu v. Hughes Tool Co., 569 F.2d 459, 471–72 (9th Cir.1978))).  A statement that certain evidence is not relevant, far from being an "opinion as to an ultimate issue of fact," is merely part of the court's obligation to rule on the parties' evidentiary objections.  It does not serve as a proper basis for requesting a new trial.

Taken together, plaintiff's allegations of prejudicial misconduct fall far short of the level required to justify a new trial.  Both parties had a fair and full opportunity to present their cases to the jury.  Plaintiff's failure to succeed on the merits is attributable both to the lack of skill with which her attorney conducted the trial and to the lack of clear evidence of discrimination based on race, gender, or national origin.  The nature of the evidence presented is discussed below.

## IV.    Weight of the Evidence

Plaintiff's final argument is that the jury's verdict was against the clear weight of the evidence.

In order to prevail at trial, plaintiff was required to carry her burden under the three-step McDonnell Douglas standard for establishing unlawful discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The McDonnell Douglas inquiry involves three analytical stages.  First, a plaintiff must establish a prima facie case of discrimination.  Costa v. Desert Palace, Inc.,

10

299 F.3d 838, 855 (9th Cir. 2002), aff'd, 539 U.S. 90 (2003).  Second, the burden of production shifts, requiring defendants to proffer a legitimate, non-discriminatory reason for the challenged action.  Id.  If defendant succeeds at carrying his burden of production, the plaintiff then has "the full and fair opportunity to demonstrate," through presentation of her case and through cross-examination of the defendant's witnesses, that discrimination, rather than the proffered reason, was the true reason for the employment decision.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).  Throughout these stages, a plaintiff retains the burden of persuasion to prove unlawful discrimination.  Costa, 299 F.3d at 855.

Before turning to the merits of plaintiff's argument, the court notes that plaintiff has made it exceedingly difficult for the court to rule on her motion by filing a brief which cites, almost exclusively, materials and testimony that are not part of the record before the jury.  For example, the section of plaintiff's brief titled "Bernedine Faison Discriminated Against Plaintiff Based on Her Race" consists almost entirely of citations to the depositions and affidavits of Michael Yee, William Norris, and Lina Siam.  All three individuals testified at trial, and none of their depositions was admitted into evidence.  Also, certain citations appear to be Bates numbers (e.g., "USA000601") but are not associated with any document, whether admitted into evidence or otherwise.  Finally, other passages in plaintiff's brief state facts with no citation whatsoever.

Materials not before the jury, of course, cannot serve as the basis for plaintiff's argument that the jury's verdict was against the clear weight of the evidence, and plaintiff's motion must be denied on that basis alone.

Even if plaintiff were to file an amended brief containing proper citations to materials in the record, the evidence is not so one-sided as to suggest the need for a new trial.  Defendant's stated position in opposition to plaintiff's claims of discrimination is that plaintiff's career stalled as a result of her lack of interpersonal skills and her animosity towards one of her coworkers, Judy Martinez, rather than any racial or gender bias on the part of Faison or Robinson.  The record contains ample evidence to support this theory.

First, Faison testified that she did not make any employment decisions on the basis of race or gender, RT at 273–74, and that she actually rewarded plaintiff with details and monetary bonuses prior to the period in question, RT at 137–143. Faison promoted other Asian employees, including Filipino employees, to higher level positions. RT at 230:7–9, 273–74.

Second, several other witnesses, including one of plaintiff's own witnesses, testified that Faison did not make employment decisions based on race or gender. RT at 225:11–14, 267, 387, 544, 522:16–523:2.

Third, several witnesses, including plaintiff's witness Michael Yee, testified at length about the personal animosity between plaintiff and Martinez, which stemmed from a 1993 incident. RT at 468–470 (Yee); id. at 516–521 (Martinez). In 1993, Martinez complained to Yee that plaintiff was lazy and was not doing "shit" in the office. Id. at 468. Plaintiff learned of this comment and confronted Martinez. Id. at 517–18. Following the incident, the two women ceased speaking to each other—a state of affairs which persists today. Id. at 521. Taken together, these facts support a jury finding that defendant denied plaintiff promotions for lawful, nonpretextual reasons.

This is not to say that the record is devoid of evidence that defendant's employees—particularly Bernedine Faison—harbored prejudices against Asians generally, and against Filipinos in particular. Yee testified that Faison refused to shop at a local shopping center, which Faison disparagingly referred to as "Manila town." RT at 496:16–25. Faison also complained to Yee that an Asian family had moved in next door and caused a cockroach infestation. RT at 497:3–9. In order to prevail on her Title VII claim, however, plaintiff was required to prove that racial or gender bias was a motivating factor behind plaintiff's failure to receive promotions. The jury found in favor of defendant based on a record which might reasonably support either party's position. Granting a new trial under those circumstances would be an arbitrary substitution of the court's conclusion for that reached by the jury. Plaintiff's motion for judgment as a matter of law, or for a new trial, is therefore denied.

CONCLUSION

For the foregoing reasons, the court hereby DENIES plaintiff's motion for judgment as a matter of law or a new trial.

IT IS SO ORDERED.

Dated: June 5, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California